The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MALIKA BENNETT, on her own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BED BATH & BEYOND, INC.,<br><br>Defendant. | No. 2:26-cv-00862-RAJ<br><br>DEFENDANT BED BATH & BEYOND, INC.'S MOTION TO DISMISS COMPLAINT<br><br>NOTE ON MOTION CALENDAR: July 6, 2026 |



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

A. The Washington Attorney General Long Advised that Email Subject Lines Accurately Reflecting the Email's Contents Comply with CEMA, and Washington Appellate Courts Have Agreed. .......... 2

B. *Brown* and These CEMA Lawsuits .......... 3

C. Plaintiff's Claims. .......... 4

III. LEGAL STANDARDS .......... 5

A. Rule 12(b)(6) Motion to Dismiss. .......... 5

B. The Commercial Electronic Mail Act. .......... 6

IV. ARGUMENT .......... 6

A. Plaintiff Fails to State a CEMA Violation. .......... 6

1. Plaintiff Does Not Sufficiently Allege Beyond Knew or Had Reason to Know Plaintiff's Email Address Belonged to a Washington Resident. .......... 6

2. Plaintiff Cannot Sue over Emails She Never Received. .......... 8

3. Plaintiff Does Not Plausibly Allege the Emails Had False or Misleading Subject Lines. .......... 9

a. The "Last Call" and Similar Statements Are Puffery. .......... 10

b. The Subject Lines Were Neither False Nor Misleading. .......... 11

B. Plaintiff Does Not Allege an Injury to Business or Property as Required Under the Consumer Protection Act. .......... 12

1. Plaintiff Failed to Allege the Requisite Injury to Business or Property. .......... 12

2. An Interpretation of CEMA that Eliminates the Injury Requirement Would Impermissibly Rewrite the CPA. .......... 16

a. Courts cannot eliminate the CPA's injury to business or property requirement. .......... 16




Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

b. The legislature cannot eliminate the CPA's injury to business or property requirement by implication........................ 17

C. Applying *Brown* Retroactively Would Violate Due Process Because Beyond Lacked Fair Notice of What Conduct Was Considered Unlawful. ....... 19

D. Because Plaintiff's CEMA Claim Fails, the Court Should Dismiss the CPA Claim That Relies on It. ................................................................ 22

E. Plaintiff's Claim for Actual and Treble Damages Should Be Dismissed. .......... 22

V. CONCLUSION ........................................................................................................ 23




Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amalgamated Transit Union Loc. 587 v. State*,
142 Wn.2d 183 (2000) .......... 18, 19

*Anderson v. Valley Quality Homes, Inc.*,
84 Wn. App. 511 (1997) .......... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5, 6, 8, 11

*Assoc. Gen. Contractors of Wash. v. State*,
2 Wn.3d 846 (2024) .......... 18, 19

*Black v. Cent. Puget Sound Reg'l Transit Auth.*,
195 Wn.2d 198 (2020) .......... 18, 19

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996) .......... 20, 21

*Boeing Co. v. State*,
74 Wn.2d 82 (1968) .......... 19

*Brown v. Old Navy, LLC*,
4 Wn.3d 580 (2025) .......... *passim*

*Chen v. Sur La Table, Inc.*,
655 F. Supp. 3d 1082 (W.D. Wash. 2023) .......... 3, 21, 22

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .......... 12

*El Centro de la Raza v. State*,
192 Wn.2d 103 (2018) .......... 18, 19

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009) .......... 6, 22

*Greenberg v. Amazon.com, Inc.*,
3 Wn.3d 434 (2024) .......... 19, 20

*Grizzly Gen. Contractors Corp. v. Kitsap Pub. Health Dist.*,
2025 WL 81384 (W.D. Wash. Jan. 13, 2025), *aff'd*, 2026 WL 753173 (9th Cir. Mar. 17, 2026) .......... 22



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Gutierrez v. Converse Inc.*,
2024 WL 2106952 (C.D. Cal. May 2, 2024) ....................7

*Hale v. Wellpinit Sch. Dist. No. 49*,
165 Wn.2d 494 (2009) ....................16

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
105 Wn.2d 778 (1986) ....................13

*Hanson v. Carmona*,
1 Wn.3d 362 (2023) ....................16

*In re Apple & AT & TM Antitrust Litig.*,
596 F. Supp. 2d 1288 (N.D. Cal. 2008) ....................9

*In re Facebook Priv. Litig.*,
192 F. Supp. 3d 1053 (N.D. Cal. 2016) ....................9

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*,
754 F. Supp. 2d 1239 (W.D. Wash. 2010), *aff'd*, 450 F. App'x 685 (9th Cir. 2011) ....................5

*Integra Med Analytics LLC v. Providence Health & Servs.*,
854 F. App'x 840 (9th Cir. 2021) ....................12

*Lierboe v. State Farm Mutual Automobile Insurance Co*,
350 F.3d 1018 (9th Cir. 2003) ....................9

*Lorentzen v. Kroger Co.*,
532 F. Supp. 3d 901 (C.D. Cal. 2021) ....................9

*Lunsford v. Saberhagen Holdings, Inc.*,
166 Wn.2d 264 (2009) ....................19

*Malibu Media, LLC v. Doe*,
2014 WL 2615351 (S.D. Fla. May 21, 2014) ....................7

*Martinez v. Newsom*,
46 F.4th 965 (9th Cir. 2022) ....................9

*Mason v. Mortg. Am., Inc.*,
114 Wn.2d 842 (1990) ....................23

*Mielke v. Tacoma RV Ctr., Inc.*,
30 Wn. App. 2d 1038, 2024 WL 1510663 (2024) ....................13

*Montes v. SPARC Grp. LLC*,
586 P.3d 999 (Wash. 2026) .................... *passim*



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ....................................................................................11

*Paris v. Steinberg & Steinberg*,
828 F. Supp. 2d 1212 (W.D. Wash. 2011)...................................................................22

*Prudencio v. Midway Importing, Inc.*,
831 F. App'x 808 (9th Cir. 2020) ...............................................................................12

*Race v. Fleetwood Retail Corp. of Wash.*,
116 Wn. App. 1041, 2003 WL 1901274 (2003) .........................................................13

*Sauk Suiattle Indian Tribe v. City of Seattle*,
25 Wn. App. 2d 741, 749 (2023) ................................................................................10

*Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*,
64 Wn. App. 553 (1992) .............................................................................................23

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ........................................................................................6

*St. Paul Fire & Marine Ins. Co. v. Updegrave*,
33 Wn. App. 653 (1983) .............................................................................................23

*State v. Carter*,
3 Wn.3d 198 (2024) ....................................................................................................19

*State v. Heckel*,
122 Wn. App. 60 (2004) ...............................................................................................3

*State v. Heckel*,
143 Wn.2d 824 (2001) ..................................................................................................3

*State v. Wadsworth*,
139 Wn.2d 724 (2000) ................................................................................................16

*United States v. AMC Ent., Inc.*,
549 F.3d 760 (2008)..............................................................................................20, 21

*United States v. Approximately 64,695 Pounds of Shark Fins*,
520 F.3d 976 (9th Cir. 2008) ......................................................................................20

*Wash. Educ. Ass'n v. State*,
93 Wn.2d 37 (1980) ..............................................................................................18, 19

*Wright v. Lyft, Inc.*,
189 Wn.2d 718 (2017) ....................................................................................... *passim*



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Yourish v. Cal. Amplifier*,
191 F.3d 983 (9th Cir. 1999) ....................................................................................11

**State Statutes**

RCW
19.86.090..........................................................................................................17, 18, 22
19.190.020..................................................................................................................21
19.190.020(1)................................................................................................................6
19.190.020(1)(b) ......................................................................................................6, 15
19.190.030..........................................................................................................12, 13, 14
19.190.030(3)..............................................................................................................13
19.190.040.............................................................................................................17, 19
19.190.040(1)..........................................................................................................9, 22
19.190.060.............................................................................................................14, 15
19.190.070..................................................................................................................15
19.190.090(1)..............................................................................................................17

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 5

**Constitutional Provisions**

Wash. Const. art II, § 1…………………………………………………………………..16

Wash. Const. art II, § 37……………………………………………………………17, 18, 19

Wash. Const. art IV, § 1 ……………………………………………………………………16



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# I. INTRODUCTION

Plaintiff Malika Bennett brings this putative class action based on sixteen marketing emails Defendant Bed Bath & Beyond, Inc. ("Beyond") allegedly sent over the course of two years. She claims Beyond offered time-limited sales on each occasion but later extended the sales. Plaintiff's theory depends on an inference that later extensions show the stated deadlines were false when made. That inference is not plausible absent factual allegations (missing here) showing Beyond had already decided to continue the same promotion on materially identical terms when the initial email offers were sent.

Notably, she does not allege she even received the majority of the emails she challenges—or that she saw, opened, or read any of the seven emails she alleges she actually did receive. Nor does she allege that she made any purchase in reliance on any of these emails. She nonetheless brings claims under Washington's Commercial Electronic Mail Act ("CEMA") and Consumer Protection Act ("CPA") on the theory that the challenged emails' subject lines were "false or misleading" as to the duration or availability of the promotions advertised therein. Beyond respectfully seeks dismissal of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6)[1] for the following reasons:

***First,*** Plaintiff fails to allege any facts to support three elements of a CEMA violation. She fails to allege that (1) Beyond had reason to know Plaintiff's email address belonged to a Washington resident; (2) she received the majority of the emails she challenges; and (3) the subject lines were false or misleading because (a) several subject lines were merely inactionable puffery and (b) Plaintiff pleads no facts showing that Beyond intended to extend sales beyond their stated expiration periods at the time the emails were sent.

***Second,*** Plaintiff does not allege the email subject lines caused injury to her business or property, required elements of her CPA claim. Even if she alleged she read the subject lines, opened the emails, or purchased a product advertised in them (she does not), that still would not

---

[1] Beyond is still investigating whether Plaintiff agreed to arbitrate her claims. Beyond reserves the right to raise all defenses related to the application of an arbitration agreement, including but not limited to, a motion to compel arbitration, and brings this motion without waiving this right.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

suffice because a plaintiff does not suffer CPA injury when "she purchases—and obtains—the very product she sought to obtain but does so because the seller misrepresented the product's price history." *Montes v. SPARC Grp. LLC*, 586 P.3d 999, 1001–02, 1004 (Wash. 2026).

***Third***, when Beyond allegedly sent the majority of the emails, the Washington Attorney General's office publicly advised companies like Beyond that an email's "subject line is NOT deceptive [if] the subject line clearly represents what is being sent" and court decisions were in accord. An April 2025 Washington Supreme Court ruling flipped that prevailing interpretation of CEMA on its head, opening the floodgates to CEMA cases like this one. Due process forbids punishing Beyond for emails that complied with the authoritative read of CEMA at the time Beyond sent the emails.

***Fourth***, Plaintiff's CPA claim fails because it depends entirely on her CEMA claim.

***Finally***, Plaintiff alleges no basis for actual and treble damages under CEMA or the CPA.

## II. FACTUAL BACKGROUND

### A. The Washington Attorney General Long Advised that Email Subject Lines Accurately Reflecting the Email's Contents Comply with CEMA, and Washington Appellate Courts Have Agreed.

From at least October 2020 through April 2025 (well before the start of the putative class period and challenged emails in this case), the Washington Attorney General's office posted guidance on how to comply with CEMA. Its guidance was clear: if an email's subject line accurately reflected the contents of the email, it was not spam. The Attorney General advised:

- "One of the easiest ways to tell if an email violates Washington's spam statute is to take a look at the subject line of the email and compare it to the text of the message."
- "If the subject line is NOT deceptive—in that the subject line clearly represents what is being sent—the email does not likely meet this element of the spam statute."
- "Carefully examine the body of the email message as it relates to the email's subject line."

Request for Judicial Notice ("RJN"), Exs. A & B (prior guidance). The Attorney General at no point warned companies that CEMA prohibits subject lines that accurately reflect the contents of



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

the email could nevertheless be considered misleading. To the contrary, the Attorney General advised that "the subject line is NOT deceptive … [if] the subject line clearly represents what is being sent." *Id.*

The Attorney General's advice reflected the general understanding at the time. In 2001, the Washington Supreme Court described, in dicta, the problem CEMA addressed: "When spammers use subject lines 'such as Hi There!,' 'Information Request,' and 'Your Business Records,' it becomes 'virtually impossible' to distinguish spam from legitimate personal or business messages." *State v. Heckel*, 143 Wn.2d 824, 835 (2001) (footnote omitted). In 2004, the Washington Court of Appeals later in the same case also focused on whether the subject line misrepresented the content of the email, ruling that "the subject line was clearly designed to entice the recipient to open the message … by enticing the recipient to believe that the message might be from a friend or acquaintance or business contact … rather than a commercial advertisement." *State v. Heckel*, 122 Wn. App. 60, 71 (2004). As recently as 2023, courts still interpreted CEMA this way. *See Chen v. Sur La Table, Inc.*, 655 F. Supp. 3d 1082, 1089–90 (W.D. Wash. 2023) ("CEMA is best interpreted to apply only when the subject line is 'false or misleading' with respect to the commercial nature of the email.").

**B. *Brown* and These CEMA Lawsuits.**

In April 2025, the Washington Supreme Court surprised businesses (and ostensibly the Attorney General's office) with its ruling in *Brown v. Old Navy, LLC* that, "[t]o violate [CEMA] subsection (1)(b), an e-mail subject line does not need to deceive consumers about the subject or purpose of the email—it merely needs to contain false or misleading information." 4 Wn.3d 580, 589 (2025). Since *Brown*, the Attorney General has issued new, different guidance, no longer advising that "the subject line is NOT deceptive … [if] the subject line clearly represents what is being sent." RJN, Ex. C (new guidance). Since *Brown*, numerous CEMA actions have been filed challenging promotional email subject lines that pre-*Brown* guidance identified as lawful. Beyond is aware of more than 120 CEMA email cases filed since *Brown* on substantially the same grounds.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**C. Plaintiff's Claims.**

Beyond is a retailer based in Delaware and Utah. Dkt. 1 ¶ 7; Dkt. 1-2 ¶ 40 ("Compl."). Plaintiff does not allege Beyond sent any emails with subject lines misrepresenting the contents of the email; she does not allege Beyond violated the interpretation of CEMA prevailing before April 2025. Instead, she takes issue with Beyond emails that announced time-limited promotions. *See generally id.* Specifically, she alleges that between February 2024 and December 2025, Beyond sent sixteen emails—only seven of which she claims she received—with subject lines containing what she believes are false or misleading statements of fact regarding "the 'duration or availability of a promotion.'" *Id.* ¶¶ 100, 119-120. She alleges these subject lines were misleading not because the body of the email failed to actually offer the promotion, but because Beyond later extended the promotions. *Id.* These email subject lines, by date, are as follows below:

1. February 19, 2024: Presidential Savings End Tonight!
2. May 26, 2024: The Memorial Day sale ENDS Tomorrow!
3. May 27, 2024: Up to 70% off 1000s of Items ends TONIGHT [timer emoji]
4. May 27, 2024: LAST CALL: 70% Off 1000s of items [siren emoji]
5. July 17, 2024: 72-Hour Flash Deals End Tonight [clock emoji]
6. July 17, 2024: Hurry! Just Hours Left to Save [siren emoji]
7. July 17, 2024: Final Chance to Shop Flash Deals
8. September 1, 2024: The Top Deals of The Season End Tomorrow! [clock emoji]
9. September 2, 2024: [siren emoji] Labor Day Sale Ends TONIGHT [siren emoji]
10. October 23, 2025: Up to 70% off Fall Clearance ends tomorrow! [maple leaf emoji]
11. October 24, 2025: Fall Clearance ends tonight [multi leaf emoji]
12. October 29, 2025: Ends tomorrow: Up to 70% off [lightning emoji]
13. October 30, 2025: Ends tonight: Semi-Annual Beyond a Deal Event [clock emoji]
14. November 2, 2025: Ends tomorrow: Up to 50% off top picks [clock emoji]



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

15. November 3, 2025: Up to 50% off holiday savings ends tonight [timer emoji]

16. December 1, 2025: Final hours! Up to 70% off + new deals inside [eyes emoji]

*Id.* ¶¶ 100, 111-118 & Ex. A. Of these emails, Plaintiff alleges she received only those sent between October 23, 2025 and December 1, 2025. *Id.* ¶¶ 111-118. Throughout her Complaint, Plaintiff also generally describes various other emails that she alleges contain "false and misleading statements" in their subject lines—though she does not allege that she received them, that they violated her right to be free from deceptive emails under CEMA, or that they can supply a basis for conferral of class status. *See generally id.* ¶¶ 44-100, 121.

Plaintiff speculates that Beyond knew it sent the emails to Washington residents because it is "highly probable that a seller of … Beyond's size and sophistication employs … means of tying consumers' email addresses to their physical locations, at least at the state level." *Id.* ¶ 109. But Plaintiff does not allege Beyond knew or had reason to know ***her email address*** belonged to a Washington resident when the emails were sent.

Based on these emails, Plaintiff brings claims under CEMA and the CPA. *Id.* ¶¶ 121–148. She seeks to represent a class of "All Washington citizens holding an email address to which [Beyond] sent" any of the seven emails she alleges she received, as well as the nine other emails which she does not allege she received, as set forth in Exhibit A to her Complaint. *Id.* ¶ 121. She seeks an injunction, "the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled," and attorneys' fees and costs. *Id.* ¶¶ 138, 148.

## III. LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint can be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim." *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 754 F. Supp. 2d 1239, 1244 (W.D. Wash. 2010), *aff'd*, 450 F. App'x 685 (9th



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Cir. 2011). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Plaintiffs must plead facts that "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Courts should not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**B. The Commercial Electronic Mail Act.**

CEMA is a Washington statute that imposes liability on any person who sends an email "from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that[] … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b). CEMA applies only to email subject lines; it "does not regulate the body of the e-mail." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1058 (9th Cir. 2009) (quoting *Heckel*, 122 Wn. App. at 60).

## IV. ARGUMENT

**A. Plaintiff Fails to State a CEMA Violation.**

Plaintiff does not allege facts to show: (1) Beyond knew or had reason to know Plaintiff was a Washington resident when she received any email; (2) she received over half of the emails on which she purportedly bases her claims; or (3) that the email subject lines were false or misleading.

**1. Plaintiff Does Not Sufficiently Allege Beyond Knew or Had Reason to Know Plaintiff's Email Address Belonged to a Washington Resident.**

Plaintiff's CEMA claim fails for the independent reason that she does not plausibly allege Beyond knew or had reason to know Plaintiff's email address belonged to a Washington resident. CEMA applies only to emails that "the sender knows, or has reason to know," "is held by a Washington resident." RCW 19.190.020(1).[2] Plaintiff speculates that Beyond must *in*

[2] Plaintiff does not allege any email at issue was sent from a computer in Washington.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*general* know email recipients' residence based on: (1) the "sheer volume" of its marketing emails; (2) customers' online purchases or self-reported data; (3) tracking IP addresses; (4) purchasing, requesting, or utilizing the consumer data of commercial data brokers or identity resolution services; or (5) requesting information from the registrant of the internet domain names contained in recipient email addresses. *See* Compl. ¶¶ 102-108. None of these bases support her speculation that Beyond had reason to know that *Plaintiff's* email address belonged to a Washington resident.

*First,* Plaintiff makes no attempt to tie her conclusory allegation regarding the "sheer volume" of emails to *her own residency*. *See* Compl. ¶ 102. Plaintiff suggests Beyond sends enough marketing emails that it must be on notice that "Washington residents would receive its emails," *id.*, but that still does not explain how Beyond should have known *her* email was tied to a Washington resident.

*Second,* Plaintiff speculates Beyond "may obtain location information … when consumers make purchases" from Beyond through digital platforms "or otherwise self-report" such information to Beyond. Compl. ¶ 103. However, even if this speculation were true, Plaintiff does not allege she made any purchase from Beyond or "self-reported" her location information.

*Third,* Plaintiff speculates Beyond "may" be able to obtain location information tied to email addresses by tracking "the IP addresses of devices used to open [its] emails, which in turn can be correlated to physical location." Compl. ¶ 104. However, even if she alleged Beyond did obtain the IP addresses of email recipients opening emails, IP addresses are unreliable proxies for geolocation, let alone state of residency. *See Gutierrez v. Converse Inc.*, 2024 WL 2106952, at *17 (C.D. Cal. May 2, 2024) (explaining IP addresses did not allow defendant "to make a determination as to where the chat users were located"); *Malibu Media, LLC v. Doe*, 2014 WL 2615351, at *2 (S.D. Fla. May 21, 2014) (declining to rely solely on plaintiff's assertions that jurisdiction and venue were appropriate based on the geolocation of defendant's IP address). In any event, Plaintiff does not allege she opened *any* Beyond marketing emails prior to receiving



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

any of the emails she challenges, nor that she opened any of the emails she allegedly received or that her IP address would identify her email address as associated with a Washington resident.

Plaintiff speculates that Beyond "appears" to use a platform called Bird to manage its email marketing campaigns and that Bird "should" allow Beyond to determine who viewed its emails and that it should also produce a list of every link an email recipient clicked on, Compl. ¶ 105. However, Plaintiff only speculates that Beyond would have access to lists of recipients who clicked on its emails and of links recipients clicked on. She provides no factual support for her supposition that Beyond actually received this information, nor does she allege she clicked on any links in the Beyond emails she received. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard … asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)). Further, Plaintiff does not explain how this information would allow Beyond to obtain any kind of location information for such email addresses, let alone information establishing that *her* email address was associated with a Washington resident.

*Finally*, Plaintiff says Beyond "may" "purchas[e] consumer data" or "us[e] 'identity resolution' services" to tie email addresses to residence, or request this data from the internet domain registrants. Compl. ¶¶ 106-108. However, she again provides no factual support for her suppositions that Beyond might obtain data from these third-party services or that the information would be available upon Beyond's request and thus again fails to sufficiently satisfy *Iqbal*'s plausibility standard. And she has not alleged that these third-party companies or the email domain registrants would identify *her email address* as belonging to a Washington resident.

Because Plaintiff fails to plausibly allege Beyond knew, or had reason to know, that a Washington resident held her email address, her CEMA claim fails.

**2. Plaintiff Cannot Sue over Emails She Never Received.**

Plaintiff purports to represent a class to whom Beyond "sent or caused to be sent any email listed in Exhibit A during the Class Period." Compl. ¶ 121. But Plaintiff does not allege she received nine of the sixteen emails in Exhibit A to the Complaint. *Compare id.* ¶¶ 111-118,



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*with* Ex. A to Complaint. She thus cannot assert CEMA claims based on these emails because she can only bring claims for emails she received. The Ninth Circuit's decision in *Lierboe v. State Farm Mutual Automobile Insurance Co.* is instructive on this point. In that case the Ninth Circuit vacated the district court's order certifying a class and remanded with an order directing the district court to dismiss the named plaintiff's claim where she did not suffer the injury she sought to pursue on behalf of the putative class. 350 F.3d 1018, 1022 (9th Cir. 2003). In doing so, the Court observed:

> [I]n class actions, the named representatives must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.

*Id*. (internal citation omitted). *Cf.* RCW 19.190.040(1) (providing for "[d]amages to the recipient"). Other cases are in accord and support dismissing Plaintiff's claims based on emails she never received. *See, e.g.*, *Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022) (holding plaintiffs lacked standing to bring class action complaint against school districts in which they were not enrolled and state special schools they did not attend); *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 909, 911 (C.D. Cal. 2021) (holding plaintiff could not assert claims in putative class action complaint related to products she never purchased and dismissing claims); *In re Facebook Priv. Litig.*, 192 F. Supp. 3d 1053, 1058 (N.D. Cal. 2016) (concluding plaintiff could not represent putative class where she did not suffer alleged injury at issue in litigation); *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008) (holding plaintiffs failed to state claims on behalf of putative class where they alleged violations of state consumer protection laws in states where they did not reside and dismissing these claims).

**3. Plaintiff Does Not Plausibly Allege the Emails Had False or Misleading Subject Lines.**

Plaintiff does not plausibly allege the subject lines of any emails (received or not) are false or misleading because (a) the "last call," "final hours," "just hours left," and "final chance" statements are inactionable puffery as a matter of law and (b) she does not allege facts from which the Court can plausibly infer the sales were not time-limited as advertised when sent.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**a. The "Last Call" and Similar Statements Are Puffery.**

A statement in a subject line is not false or misleading if it is "mere puffery." *Brown*, 4 Wn.3d at 596 ("mere puffery [is] not prohibited by subsection (1)(b)"). "'Mere puffery' has been described as vague or highly subjective terms that cannot be substantiated." *Id.* "[S]ubjective, unverifiable claims about a product or service are 'mere puffery' and cannot give rise to a false advertising claim." *Sauk Suiattle Indian Tribe v. City of Seattle*, 25 Wn. App. 2d 741, 749 (2023).

The complaint challenges four emails that stated a sale had "hours left" or that it was the recipients' "final" or "last" chance or call to take advantage of a sale. *See* Compl.¶¶ 57-60, 64-68, 96-98. The "last call" and "final chance" subject lines, set forth in emails sent on May 27, 2024, and on July 17, 2024, *see* Compl.¶¶ 57-60, 64-68, are puffery. Likewise, the "final hours" and "just hours left" subject lines, set forth in the emails sent (again) on July 17, 2024, and on December 1, 2025, *see id.* ¶¶ 64-68, 96-98, are also puffery. The subject lines are puffery because "last chance," "final chance," "final hours," and "just hours left" are subjective phrases that do not describe how long the sale or "chance" lasts, and no reasonable consumer would understand any of these phrases to necessarily mean that the advertised sale ended that day. Plaintiff does not allege the extended sales did not represent another chance, but that they did not end as advertised. *See id.* ¶¶ 60, 67-68, 98-99.

Plaintiff alleges that the May 27, 2024, "last call" email "featured an updated countdown timer which showed less than seven hours remaining in the promotion"; that the July 17, 2024, "final chance" email contained a countdown timer that "presented the sale with roughly [eight] hours remaining; that the July 17, 2024, "just hours left" email message contained a timer that indicated the deals would end with 13.5 hours; and that the December 1, 2025, "final hours" email contained a countdown timer that indicated "roughly 4.5 hours remained until the end of the sale."[3] *Id.* ¶¶ 57, 64-65, 96. However, any firm expiration dates in the bodies of the emails do

[3] Plaintiff does not state whether the timers described herein are located within the bodies of these emails except with respect to the July 17, 2024 "just hours left" email. Presumably, that is what Plaintiff alleges because Plaintiff does not claim that the timers appear within the subject lines. Compl. ¶¶ 57, 64-65, 96 & Ex. A to Complaint.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

not transform the subject lines into actionable misrepresentations under CEMA. This is so because "whether a subject line is misleading requires evaluating 'the subject line alone' because CEMA 'does not regulate the body of the e-mail.'" *Brown*, 4 Wn.3d at 589 (citation omitted). The Court therefore should dismiss the CEMA claim to the extent it depends on the May 27, 2024, July 17, 2024, or December 1, 2025 emails described herein.

**b. The Subject Lines Were Neither False Nor Misleading.**

The complaint alleges the sixteen email subject lines at issue were false and misleading because they advertise a specific end date of a promotion, which Beyond allegedly subsequently extended. But there is nothing improper about a company deciding to extend the duration of a promotion.

Plaintiff's argument relies on the false premise that companies cannot extend promotions without running afoul of CEMA. That is not the law. As the *Brown* court explained, email subject lines do not "retroactively become[] false (and actionable) under CEMA because market conditions change such that a better sale is later available." *Brown*, 4 Wn.3d at 595. The same is true here. Beyond's subsequent decision to extend the duration of a sale or discount cannot, by itself, retroactively render the earlier subject lines false or misleading.[4]

Plaintiff fails to allege any facts showing the email subject lines were false or misleading when made, i.e., facts showing a preexisting plan to continue the promotion beyond the stated termination date. Nor does the complaint allege that the post-deadline offers involved the same products, discounts, or promotional terms. Without those facts, the allegation that a promotion was later extended does not make the original subject line false when sent. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009) (rejecting allegations as "merely possible" to support "impermissible motive"); *see also Iqbal*, 556 U.S. at 678 (allegations "'consistent with' a defendant's liability … 'stop[] short of the line between possibility and plausibility'") (quoting

[4] This principle is applied by courts across various contexts and legal theories when considering whether a statement was false or misleading. *See, e.g.*, *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (explaining in context of fraud claim that plaintiffs must explain "why the disputed statement was untrue or misleading when made" (citation omitted)).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Twombly*, 550 U.S. at 557). Plaintiff must allege facts to "nudge[] [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

"When faced with two possible explanations, only one of which can be true and only one of which results in liability[,] something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 810 (9th Cir. 2020) (citation modified). The Court "need not accept the conclusion that [Beyond] engaged in unlawful conduct when its actions are in line with lawful 'rational and competitive business strategy.'" *Integra Med Analytics LLC v. Providence Health & Servs.*, 854 F. App'x 840, 845 (9th Cir. 2021) (citations omitted) (dismissing complaint because plaintiff failed to allege facts excluding a competing explanation); *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998–99 (9th Cir. 2014) (same).

In short, Plaintiff does not plausibly allege facts showing the sales described in the challenged emails were not time-limited when advertised. Without this factual basis, Plaintiff's theory is a de facto prohibition on extending any sale, for any reason. This is not the law.

### B. Plaintiff Does Not Allege an Injury to Business or Property as Required Under the Consumer Protection Act.

#### 1. Plaintiff Failed to Allege the Requisite Injury to Business or Property.

Plaintiff fails to allege injury to business or property as required to sustain a CPA claim. CEMA "creates a private cause of action with damages only for phishing violations. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 723, 728 (2017). Recipients of commercial emails that allegedly violate CEMA may pursue claims for damages only under the CPA. RCW 19.190.030; *cf. Wright*, 189 Wn.2d at 728 ("[A] recipient of unsolicited commercial text messages is not bereft of legal remedy—he or she may pursue redress under the CPA."). To prevail on a CPA claim, a plaintiff must establish five elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the public interest; (4) injury to the plaintiff's business or



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986).

Certain statutes—including CEMA—create per se CPA violations. *See* RCW 19.190.030. A per se violation, however, establishes only the first three *Hangman Ridge* elements. Indeed, CEMA says "the practices covered by this chapter are matters vitally affecting the public interest" and "[a] violation of this chapter … is an unfair or deceptive act in trade or commerce … for the purpose of applying the consumer protection act," RCW 19.190.030(3)—the first three *Hangman Ridge* elements. A plaintiff must still prove injury to business or property and causation. *Anderson v. Valley Quality Homes, Inc.*, 84 Wn. App. 511, 516 (1997); *see also Race v. Fleetwood Retail Corp. of Wash.*, noted at 116 Wn. App. 1041, 2003 WL 1901274, at *6 (2003) (unpublished) (affirming dismissal of per se CPA claim for lack of injury); *Mielke v. Tacoma RV Ctr., Inc.*, noted at 30 Wn. App. 2d 1038, 2024 WL 1510663, at *5 (2024) (unpublished) (dismissing per se CPA claims for lack of causation). Both the injury and causation elements must arise from the alleged false or misleading practice itself—not merely from the existence of a statutory violation. *Hangman Ridge*, 105 Wn.2d at 784-85. Thus, even assuming a CEMA violation—and thus a per se CPA violation—Plaintiff must plausibly allege that the subject lines caused injury to her business or property. She does not do so here.

***Montes v. SPARC Group LLC.*** The Washington Supreme Court recently clarified the CPA's injury requirement in *Montes*, 586 P.3d at 1001. In *Montes*, the plaintiff purchased leggings for $6 after the retailer advertised that they were discounted from $12.50. Even though the price comparison was allegedly false—*i.e.*, the leggings rarely sold for $12.50—the Court held that a plaintiff does not suffer injury to business or property when she "purchases—and obtains—the very product she sought to obtain but does so because the seller misrepresented the product's price history." *Id.* at 1002, 1004–05. The CPA requires an objective economic loss; "disappointed expectations" resulting from a misleading representation are insufficient. *Id*. at 1001.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Under *Montes*, Plaintiff has failed to allege the required injury to business or property. She alleges that Beyond sends promotional emails with subject lines suggesting that discounts are ending imminently, only to later extend or re-offer a similar promotion. Compl. ¶¶ 42–100. But Plaintiff alleges only that she received emails with misleading subject lines—not that she opened the emails, clicked on them, purchased any product, or spent any money. *Id.* ¶¶ 111-118. Even if she had purchased a product advertised in the emails, *Montes* forecloses a CPA injury based solely on the alleged misrepresentation about the duration or urgency of a promotion. A consumer who buys a product at the advertised price has received exactly what she bargained for and has not suffered an economic loss. Because the alleged deception concerns only the purported duration of promotional pricing—and Plaintiff alleges no economic loss—her claim fails under *Montes*.

***Wright v. Lyft.*** Plaintiff attempts to avoid this conclusion by invoking *Wright*, 189 Wn.2d 718, Compl. ¶ 142, asserting that a CEMA violation automatically establishes all elements of a CPA claim. That is incorrect. *Wright* involved CEMA's prohibition on sending commercial text messages without consent under RCW 19.190.060—not CEMA's prohibition on sending emails with misleading subject lines under RCW 19.190.030, at issue here. The Washington Supreme Court held that an individual who has received a commercial text message without consent has automatically established all five elements of a CPA violation, including injury to business or property, because unsolicited commercial text messages impose concrete economic harms: they consume limited device memory, use paid data services, and interrupt the receipt of desired communications. *Id.* at 731. The Court's reasoning rested on legislative findings specific to text messages, including that recipients "pay for use when a message is received," that the limited memory of mobile devices can be exhausted, and receiving a text message interrupts recipients' receipt of welcomed messages. *Id.* at 730 (citing RCW 19.190.060). These harms arise directly from the receipt of the unsolicited text message itself, regardless of the message's content—unlike CEMA email provisions.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

The statutory scheme confirms the distinction. The text message provisions of CEMA are consent-based: sending commercial text messages without consent violates the statute regardless of what the message says. RCW 19.190.060; RCW 19.190.070. The email subject-line provision is different. It is content-based, not consent-based. CEMA does not prohibit sending commercial emails generally nor does it require advance consent; it prohibits only sending emails with false or misleading subject lines. RCW 19.190.020(1)(b). Emails with a truthful subject line do not violate the statute. Accordingly, any CPA injury tied to email must stem from the deception in the subject line, not from the mere receipt of the email. Inbox storage, bandwidth consumption, and interruption cannot supply the requisite injury to business or property because they occur whether the subject line is truthful or deceptive. A truthful subject line occupies the same inbox space and consumes the same bandwidth as a deceptive one. Alleged falsity adds nothing. Any time spent reviewing or deleting the email flows from receipt of the email itself—not from whether the subject line is truthful or misleading. *Wright*'s reasoning as to injury and causation necessarily following from receipt of a commercial text message therefore does not apply to CEMA's email provision.

***Harmonizing Wright and Montes.*** Read together, *Wright* and *Montes* reinforce the CPA's independent injury requirement. In *Wright*, the statutory violation itself caused concrete economic harm because unsolicited text messages impose costs on recipients upon receipt. 189 Wn.2d at 731. In contrast, misleading email subject lines do not impose any incremental economic harm. Under *Montes*, deception alone—particularly deception about the magnitude or duration of a sale—does not constitute injury to business or property absent an objective economic loss. 586 P.3d at 1001–02, 1004–05. Plaintiff's contrary reading of *Wright* would create an untenable result. A consumer who received an email stating "T-Shirts 50% Off" when the shirts were not actually discounted could recover under the CPA via CEMA, even though the identical misrepresentation asserted directly under the CPA would fail under *Montes* for lack of injury. Nothing in *Wright* suggests the Court intended such a result. *Wright* should not be



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

extended beyond the consent-based text-message provision because its injury analysis rested on statutory findings and device-specific costs unique to text messages.

The better reading is straightforward and harmonizes *Montes* and *Wright*: *Montes* articulates the first principle that a CPA violation—even a per se one—requires injury to business or property caused by the violation. *Wright* represents a limited holding specific to CEMA's text message provision, where the statutory violation itself produces the specific injuries identified by the legislature. This interpretation harmonizes *Wright* with *Montes* and preserves the CPA's statutory requirement of injury to business or property. This case is easier than *Montes*. Plaintiff does not allege even a purchase, much less an objectively diminished value, overcharge, or other economic loss. Because Plaintiff alleges no injury to business or property caused by the alleged subject-line misrepresentations—and none could arise from the conduct alleged—Plaintiff fails to state a CPA claim.

**2. An Interpretation of CEMA that Eliminates the Injury Requirement Would Impermissibly Rewrite the CPA.**

It is well established that a claim under the CPA requires a plaintiff to demonstrate injury to business or property. *Montes*, 586 P.3d at 1005. Eliminating this requirement—whether through judicial interpretation or through implication from subsequent legislative action—would impermissibly rewrite the statute. Courts may not dispense with a statutory element in that manner without effectively altering the CPA itself. To the extent Plaintiff argues that the injury to business or property requirement has been eliminated either by judicial decision or by implication from later legislative enactments, both theories fail.

**a. Courts cannot eliminate the CPA's injury to business or property requirement.**

Washington's separation-of-powers doctrine arises from the Washington Constitution's division of legislative and judicial authority. *State v. Wadsworth*, 139 Wn.2d 724, 735 (2000); Const. art. II, § 1; art. IV, § 1. Courts may interpret statutes, but they may not rewrite them or invade legislative prerogatives. *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 506 (2009); *Hanson v. Carmona*, 1 Wn.3d 362, 373 (2023).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Beyond's read of *Wright* not only harmonizes it with *Montes*, but also avoids the separation-of-powers issue that arises by expanding *Wright* to CEMA's email provision. RCW 19.86.090 allows a claim under the CPA only if a plaintiff is "injured in his or her business or property." Reading *Wright* to eliminate this requirement for CEMA email subject line claims—as Plaintiff suggests—would not be statutory interpretation; it would effectively amend the statute,[5] raising separation-of-powers concerns.

The same concern is not present with CEMA's texting provision. As *Wright* explained, the decision did not eliminate the requirement that a plaintiff suffer injury to "business or property." Rather, it recognized that the legislature structured CEMA's text-message prohibition so that the injury to business or property occurs upon receipt of the prohibited text message itself. In that context, the statutory violation inherently constitutes the required injury. The email subject-line provision is different. Liability under that provision turns on deception, not the mere receipt of a message, and thus the statutory violation does not itself establish injury to business or property. Nothing in CEMA suggests that RCW 19.190.040's damages floor eliminates the independent injury requirement imposed by RCW 19.86.090 for plaintiffs proceeding under the CPA. Reading *Wright* to supply such a rule would effectively rewrite the statute by judicial construction, intruding on the legislature's role as Washington's law-making body, and invalidating the Court's decision in *Wright*.

**b. The legislature cannot eliminate the CPA's injury to business or property requirement by implication.**

Article II, Section 37 of the Washington Constitution provides that statutes may not amend existing law by implication: "No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length." Const. art.

---

[5] If the legislature intended to remove the CPA injury requirement from CEMA, it knew how to do so. In 2005, the legislature amended CEMA to add protections against phishing and, for the first time, created a direct cause of action within CEMA itself: "A person who is injured under this chapter may bring a civil action in the superior court to enjoin further violations, and to seek up to five hundred dollars per violation, or actual damages, whichever is greater." RCW 19.190.090(1). The *Wright* court observed that this amendment "shows the legislature knew how to institute a cause of action and how to circumscribe its scope," and that the legislature's omission of an equivalent provision for text message violations was meaningful: "[o]missions are deemed to be exclusions." *Wright*, 189 Wn.2d at 727.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

II, §37. A statute is valid under Article II, Section 37 only if it "(1) is a complete act and (2) does not render erroneous a straightforward determination of … existing statutes." *Assoc. Gen. Contractors of Wash. v. State*, 2 Wn.3d 846, 853–54 (2024) (citation modified). "One way that a new statute might render an old statute erroneous is if the new statute conflicts with existing law or alters criteria established by existing law." *Id.* at 865–66. "[A] complete act, especially an act that adopts other statutes by reference, may still violate article II, section 37 because a complete act can still render existing statutes erroneous by not informing readers how the statute is impacting or modifying a straightforward determination of the scope of rights and duties created by those other statutes." *Black v. Cent. Puget Sound Reg'l Transit Auth.*, 195 Wn.2d 198, 210 (2020). Section 37 thus ensures "that legislators are aware of the nature and content of the law which is being amended and the effect of the amendment upon it" and that they "disclose the act's impact on existing laws." *Amalgamated Transit Union Loc. 587 v. State*, 142 Wn.2d 183, 246 (2000).

For this reason, the Washington Supreme Court has repeatedly invalidated statutes that violate Section 37. *See, e.g., El Centro de la Raza v. State*, 192 Wn.2d 103, 131–33 (2018) (provision restricting bargaining rights of charter school employees, without identifying how it related to existing statutes, unconstitutional under Section 37); *Wash. Educ. Ass'n v. State*, 93 Wn.2d 37, 41 (1980) (appropriations act limiting broad spending powers under other statutes unconstitutional where it failed to set forth those other statutes).

If interpreted as Plaintiff suggests, CEMA also violates these core constitutional principles. Assuming, for the purposes of this motion, that CEMA is a "complete act" satisfying the first prong, it fails the second prong because it renders a "straightforward" reading of the CPA "erroneous." As the Supreme Court explained in *Wright*, "the plain language indicates it was the legislature's intent for CEMA violations to be brought under the CPA." *Wright*, 189 Wn.2d at 726–28. A CEMA claim therefore proceeds through the CPA's "civil action" provision, which permits a person "who is injured in his or her business or property" to bring suit. RCW 19.86.090. Under Plaintiff's interpretation of CEMA, the statute effectively



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

eliminates this requirement and thereby obscures this "straightforward determination." *Black*, 195 Wn.2d at 210.

CEMA's damages provision removes those requirements from the CPA for CEMA violations "without explicitly showing how the Act relates to statutes it amends." *El Centro de la Raza*, 192 Wn.2d at 131–32 (citation modified). Article II, section 37 prohibits precisely that result. The decision in *Montes* renders this conclusion inescapable. *Montes* makes clear that a CPA plaintiff must allege and ultimately prove objective economic loss to "sue to enforce the Washington Consumer Protection Act (CPA)." *Montes,* 586 P.3d at 1001. Consequently, because CEMA allows a consumer to bring a civil action for damages without proof of actual economic loss, it unconstitutionally "alters [the] criteria" of the CPA. *Assoc. Gen. Contractors*, 2 Wn.3d at 865–66.

If a statute violates Article II, Section 37, "[i]nvalidation of the unconstitutional enactment is the proper remedy." *See Amalgamated Transit*, 142 Wn.2d at 256; *see also Wash. Educ. Ass'n*, 93 Wn.2d at 41 ("Because RCW 28A.58.100(1) was not fully set forth in the appropriations act which purported to amend it, the offending limitation on the powers of school districts is unconstitutional and of no effect."); *Boeing Co. v. State*, 74 Wn.2d 82, 88 (1968) ("[A]n invalid statute is a nullity. It is as inoperative as if it had never been passed."). But the Court can limit the impact by "severing any 'problematic portions while leaving the remainder intact.'" *See, e.g., State v. Carter*, 3 Wn.3d 198, 213 (2024) (citation omitted). Here, if the Court concludes that CEMA email violations automatically establish CPA injury and causation, the Court could sever RCW 19.190.040, the offending provision.

### C. Applying *Brown* Retroactively Would Violate Due Process Because Beyond Lacked Fair Notice of What Conduct Was Considered Unlawful.[6]

Plaintiff seeks to impose liability on Beyond based on a judicial interpretation of CEMA that did not exist at the time of most of the challenged conduct. When Beyond sent many of the

[6] The Washington Supreme Court's decision in *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 276 (2009), raises a common-law presumption that the new rule announced in the April 2025 *Brown* decision applies retroactively. But in deciding to apply *Brown* retroactively, the Washington Supreme Court could not consider any constitutional arguments regarding due process because those questions were not certified to it. *See, e.g., Greenberg*



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

relevant emails, both the courts and the Washington Attorney General had interpreted CEMA to prohibit only email subject lines that concealed the commercial nature of the email. *See* supra § II.A. It was not until April 2025 that the Washington State Supreme Court's decision in *Brown* announced the new interpretation on which Plaintiff relies. Until then, Beyond lacked notice that CEMA could prohibit the conduct Plaintiff now challenges. Due process requires that Beyond not be punished for complying with the then-authoritative interpretations of CEMA.

The Due Process Clause prohibits imposing liability without first giving parties fair notice of allegedly unlawful behavior. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice … of the conduct that will subject him to punishment …."). In other words, a party may not be held "accountable for actions undertaken prior to the date on which it received fair notice." *United States v. AMC Ent., Inc.*, 549 F.3d 760, 768–70 (2008). To provide fair notice, "a statute or regulation must 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly.'" *United States v. Approximately 64,695 Pounds of Shark Fins*, 520 F.3d 976, 980 (9th Cir. 2008) (citation omitted).

In *AMC Entertainment*, the Ninth Circuit rejected retroactive enforcement of a new interpretation of a regulation where, previously, different courts and the administrative agency responsible for enforcing the regulation read the regulation differently. The court explained that the plain language of the provision "did not even provide our colleagues, armed with exceptional legal training in parsing statutory language, a 'reasonable opportunity to know what is prohibited'—let alone those of 'ordinary intelligence.'" 549 F.3d at 768–69 (citation omitted). The court then declined "to hold that a person of ordinary intelligence should have known … that

---

*v. Amazon.com, Inc.*, 3 Wn.3d 434, 470 (2024) (declining to consider constitutional issues of notice and vagueness because "[t]he District Court did not certify to this court the constitutional issues Amazon now advances"). Accordingly, the Washington Supreme Court could not consider the potential due process implications of applying *Brown*'s new rule to punish with massive statutory damages emails that were in line with existing guidance when sent.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

[the provision] was susceptible only to the interpretation the government now champions." *Id.* at 768.

Here, the Washington Attorney General issued guidance to help businesses understand what conduct was proscribed by RCW 19.190.020, explaining that "the easiest way[] to tell if an email violates Washington's spam statute is to take a look at the subject line of the email and compare it to the text of the message." RJN, Exs. A & B. Courts interpreted CEMA in line with this guidance. *See, e.g., Chen*, 655 F. Supp. 3d at 1092 (finding that "CEMA's statutory text combined with the statute's legislative history and Washington caselaw supports [the] interpretation that subsection (b) in CEMA … specifically prohibits false and misleading information as to the nature of the email, i.e. that the email is an advertisement"). As explained in *Chen*, the legislative history of CEMA further supported the prevailing understanding that it was intended to "prohibit[] emails that disguised the fact that they were advertisements." *Id.*

That interpretation persisted until April 2025, when the Washington Supreme Court construed the same language to mean that the inquiry into whether a subject line was misleading required "evaluating 'the subject line alone' because CEMA 'does not regulate the body of the e-mail, only the subject line.'" *Brown*, 4 Wn.3d at 589 (citation omitted).

In light of the prior authority, an individual of "ordinary intelligence" could not have known that CEMA prohibited the conduct proscribed in *Brown* before the ruling. The decision in *Brown* represented a meaningful change in both plaintiffs' and defendants' (and the Attorney General's Office's) understanding of what was prohibited by CEMA, which is underscored by the wave of over 120 CEMA cases filed since April 2025.[7]

Applying *Brown* retrospectively to punish Beyond for emails that were in line with the then-prevailing Attorney General's guidance, the existing case law, and the legislative history of CEMA and would deny Beyond's right to due process. *See Gore*, 517 U.S. at 574. There is no

[7] Moreover, at least one justice of the Washington Supreme Court refused to join the majority's decision in Brown based on concerns consistent with Beyond's interpretation here. *See Brown*, 4 Wn.3d at 602 (Madsen, J., dissenting) (finding the "majority's interpretation of the statute *conceivable*," but not "*reasonable*, particularly where the statutory context weighs strongly in favor of an alternative interpretation") (emphasis in original).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

reasonable argument that Defendant should have known prior to April 2025 that it could not rely on those sources for guidance regarding what conduct was unlawful. Plaintiff should therefore be barred from alleging any CEMA claims based on pre-*Brown* conduct that complied with the prevailing understanding and interpretation of CEMA.

**D. Because Plaintiff's CEMA Claim Fails, the Court Should Dismiss the CPA Claim That Relies on It.**

Finally, because Plaintiff's CEMA claim fails, the Court should dismiss her CPA claim. Plaintiff does not allege any of the elements of an independent CPA claim; instead, the CPA claim is predicated exclusively on the alleged CEMA violation. *See* Compl. ¶¶ 139–148; *Chen*, 655 F. Supp. 3d at 1093 (CPA claim properly dismissed where plaintiff failed to state CEMA violation); *Virtumundo*, 575 F.3d at 1065–66 ("Because [plaintiff's] CEMA claims fail as a matter of law, his CPA claims, to the extent grounded in CEMA violations, are likewise inadequate and were properly dismissed.").

**E. Plaintiff's Claim for Actual and Treble Damages Should Be Dismissed.**

CEMA provides for statutory damages or actual damages, whichever is greater. RCW 19.190.040(1). The CPA provides for treble damages "not to exceed three times the *actual* damages sustained." RCW 19.86.090 (emphasis added). Although Plaintiff seeks both statutory and actual damages (trebled), she fails to allege any facts showing she sustained any actual damages. *See* Compl. ¶ 110 (alleging the emails violated Plaintiff's "right to be free from such annoyance and harassment" without explaining when, how, or why she experienced annoyance or harassment); Prayer for Relief (seeking actual and treble damages). Accordingly, any claim for actual damages should be dismissed. *See Grizzly Gen. Contractors Corp. v. Kitsap Pub. Health Dist.*, 2025 WL 81384, at *7 (W.D. Wash. Jan. 13, 2025) ("[The complaint] is nothing more than a 'formulaic recitation' of the elements of a CPA [claim] devoid of any factual fodder. Its failure to … allege how it was injured … is fatal to [the] CPA claim."), *aff'd*, 2026 WL 753173 (9th Cir. Mar. 17, 2026); *see also Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1217 (W.D. Wash. 2011) (similar).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiff's failure to plausibly allege any actual damages also precludes treble damages. "The case law is clear that treble damages may only be based upon actual damages." *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 565 (1992); *see also Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 855 (1990); *St. Paul Fire & Marine Ins. Co. v. Updegrave*, 33 Wn. App. 653, 660 (1983). The Court should also dismiss Plaintiff's claim for treble damages.

## V. CONCLUSION

For the above reasons, the Court should dismiss the Complaint.

Beyond certifies that on June 4, 2026, Beyond's counsel met and conferred with counsel for Plaintiff regarding the arguments raised and the relief sought in this Motion. Plaintiff is opposed.

DATED this 5th day of June, 2026.

Davis Wright Tremaine LLP
*Attorneys for Defendant*

By *s/ Lauren B. Rainwater*
Kenneth E. Payson, WSBA # 26369
Lauren B. Rainwater, WSBA #43625
Mackenzie C. Olson, WSBA # 53225

920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: 206-622-3150
Fax: 206-757-7016
kenpayson@dwt.com
laurenrainwater@dwt.com
mackenzieolson@dwt.com

*I certify that this memorandum contains 8,311 words, in compliance with the Local Civil Rules.*